IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02079–MSK–KMT

GIOVANNI LARATTA,

Plaintiff,

v.

RICK RAEMISCH, Executive Director, Colorado Department of Corrections, in his Official Capacity,
JAY KIRBY, Interim Inspector General, Colorado Department of Corrections, in his Official Capacity,
DENNIS BURBANK, Administrative Services Manager, Centennial Correctional Facility, in his Individual Capacity,
SEAN FOSTER, Associate Warden, Centennial Correctional Facility, in his Individual Capacity,
DALE BURKE, Correctional Officer, Centennial Correctional Facility, in his Individual Capacity,
LYNN TRAVIS, Correctional Officer Lieutenant, Centennial Correctional Facility, in his Individual Capacity,
RAEANNE WILL, Correctional Officer, Centennial Correctional Facility, in her Individual Capacity,
TINO HERERRA, Investigator, Office of the Inspector General, in his Individual Capacity,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

**Magistrate Judge Kathleen M. Tafoya**

This matter comes before the court on the "Partial Motion to Dismiss Third Amended

Complaint" filed by Defendants Burke, Travis, Will, and Herrera.  (Doc. No. 48 [Partial Mot.

Dismiss], filed August 14, 2013.)  Plaintiff filed his response on September 13, 2013 (Doc. No.

34 [Resp. Partial Mot. Dismiss]).  Defendants did not file a reply.

Also before the court is the "Motion to Dismiss Third Amended Complaint" filed by Defendants Raemisch, Kirby[1], and Foster on October 21, 2013.  (Doc. No. 62 [Mot. Dismiss].)  Plaintiff filed his response on November 14, 2013.  (Doc. No. 67 [Resp. Mot. Dismiss].)  Defendants did not file a reply.

These motions are ripe for recommendation and ruling.

## STATEMENT OF THE CASE

The following allegations are taken from Plaintiff's Third Amended Complaint (Doc. No. 47 [Complaint], filed July 13, 2013).  At all times relevant to the Complaint, Plaintiff was a prisoner in the custody of the Colorado Department of Corrections ("CDOC").  During the relevant time period, Plaintiff was housed in the south building of the Centennial Correctional Facility ("CCF-South"), located in Cañon City, Colorado.

During his incarceration at CCF-South, a correctional officer, Malissa Jones ("Ms. Jones"), allegedly attempted to develop an inappropriate personal relationship with Plaintiff.  Plaintiff alleges on or about January 20, 2011, Ms. Jones told Plaintiff that they should write to each other because she wanted to get to know Plaintiff and she wanted them to be friends.  Plaintiff alleges on or about January 25, 2011, Ms. Jones escorted Plaintiff back to his cell from a shower.  After letting Plaintiff back into his cell and shutting the door, and as Plaintiff was changing into a clean set of clothes, Ms. Jones peered through the window of Plaintiff's cell and

---

[1]Since Defendants filed their Motion to Dismiss, Defendants Raemisch and Kirby have been substituted as defendants in place of Roger Werholtz and Harrison "Jim" Welton, pursuant to Fed. R. Civ. P. 25(d).  (*See* Doc. Nos. 72 & 73.)

2

asked to see his genitalia.  Ms. Jones' behavior caused Plaintiff to feel extremely uncomfortable.

After the January 25, 2011, incident, Plaintiff asked Ms. Jones to leave him alone.  After Plaintiff

rejected Ms. Jones' sexual advances, he later learned that on the same day, January 25, 2011,

Ms. Jones had entered a negative chronological entry ("chron") against him.  The negative chron

alleged that Plaintiff had violated a posted operational rule that prohibited prisoners from placing

any items on their in-cell computer kiosk.  Plaintiff believed that the chron was illegitimate and

lodged against him in retaliation for his refusal of Ms. Jones's sexual advances.  On February 13,

2011, Plaintiff initiated the CDOC grievance process by filing a step one grievance against Ms.

Jones, alleging that she had engaged in sexual misconduct and retaliated against him.

On March 8, 2011, Defendant Herrera came to CCF-South to speak with Plaintiff about

the allegations made in his step one grievance, specifically Plaintiff's allegations that Ms. Jones

had engaged in sexual misconduct.  Defendant Herrera asked Plaintiff whether he could produce

any evidence, other than his own statement, in support of the allegations of sexual misconduct

contained in his grievance.  Plaintiff responded that any evidence, other than his own statement,

in support of his allegations was in the hands of CDOC.  Defendant Herrera informed Plaintiff

that because he could produce no evidence other than his own statement in support of his

allegations of Ms. Jones's sexual misconduct, Plaintiff would be "written up"—i.e. prison

disciplinary charges would be initiated against him—for "False Reporting to Authorities"

("False Reporting").

After his interview with Plaintiff, Defendant Hererra directed Defendant Travis to initiate

Code of Penal Discipline ("COPD") charges against Plaintiff for False Reporting.  On March 17,

3

2011, Defendant Travis interviewed Plaintiff about his grievance against Ms. Jones. He asked whether Plaintiff could produce evidence in support of the allegations contained in the grievance, and Plaintiff responded that perhaps Defendant Travis should check video footage and other prison records from the unit to see the frequency with which Ms. Jones would visit Plaintiff's cell to talk to him and search his cell. Plaintiff alleges that after Defendant Travis interviewed Plaintiff on March 17, 2011, Defendant Travis directed CDOC Correctional Officer Hartung ("Ms. Hartung") to go to Plaintiff's cell for the purpose of manufacturing evidence in support of the False Reporting charge.

On March 25, 2011, Defendant Travis signed a "Notice of Charge" ("COPD Notice") document indicating that Plaintiff was being charged with False Reporting. Defendant Will approved the charges, and signed the COPD Notice as the "reviewing supervisor." The factual summary set forth on the COPD Notice described Plaintiff's conversation with Defendant Travis on March 17, 2011, stated that the conversation was an "investigation," and alleged Plaintiff had provided Mr. Travis with false information during that "investigation."

On April 1, 2011, Defendant Burke presided over a formal COPD hearing against Plaintiff. Defendant Will presented CDOC's case against Plaintiff as the disciplinary officer; specifically, she read the factual summary from the COPD Notice into the record, produced Plaintiff's chron record, an affidavit from Ms. Jones, and a memorandum from Mr. Herrera.

Plaintiff presented his side at the hearing, explaining how Ms. Jones had made numerous inappropriate advances toward him, including the one documented in his grievance. Plaintiff advised that video footage from his unit might show the frequency with which Ms. Jones visited

4

his cell and that cell search records would reveal the frequency with which Ms. Jones was in his cell going through his personal effects. Plaintiff also advised that simply because there was insufficient evidence available to pursue criminal charges against Ms. Jones, as Defendant Herrera had concluded, that did not mean that Plaintiff had knowingly made false allegations against Ms. Jones.

On April 4, 2011, Defendant Burke signed a Disposition of Charge ("COPD Disposition") form indicating that he had found Plaintiff guilty of False Reporting. Defendant Burke sanctioned Plaintiff with fifty days' punitive segregation and forty-five days' loss of good time. On April 6, 2011, Defendant Foster signed the COPD Disposition affirming the guilty finding. On April 7, 2011, Plaintiff filed an administrative appeal of the guilty finding asserting that CDOC lacked sufficient evidence to support a guilty finding for False Reporting and that the conviction was made in retaliation for Plaintiff's filing of a grievance. On May 17, 2011, Defendant Burbank signed the administrative appeal, upholding the guilty finding. Plaintiff began serving his sanction of fifty days punitive segregation on or around May 17, 2011.

Plaintiff alleges during his fifty-day punitive segregation sentence, he suffered extreme sleep deprivation and a psychotic break, as well as severe anxiety, depression, paranoia, and auditory hallucinations. On May 21, 2011, Plaintiff attempted suicide and subsequently was placed on suicide watch until May 30, 2011.[2]

---

[2]Plaintiff also states he attempted suicide on May 3, 2011 (Compl., ¶ 61); however, this is before Plaintiff began serving his punitive segregation.

To challenge his False Reporting conviction, Plaintiff filed a civil complaint, pursuant to Colorado Rule of Civil Procedure 106.5, in Fremont County District Court, Case Number 2011-cv-79.  The complaint alleged that CDOC had abused its discretion and exceeded its jurisdiction when Plaintiff was convicted of False Reporting, and that the conviction violated his rights to due process and to be free from retaliation for the exercise of his right to free speech.[3] The Fremont County District Court judge agreed that CDOC had abused its discretion and exceeded its jurisdiction when it convicted Plaintiff of False Reporting, and on or around January 26, 2012, remanded the COPD case back to CDOC for a new hearing.

On remand, a new hearing chairperson, correctional officer R. Olivett ("Officer Olivett"), was assigned to Plaintiff's case.  At the hearing on remand, Officer Olivett questioned Defendant Travis as to whether, as part of his investigation of the False Reporting charge, he had reviewed the video footage Plaintiff had previously directed him to.  Defendant Travis responded that he had not. Subsequently, Officer Olivett went off the record and discussed the hearing with other CDOC staff members outside Plaintiff's presence.  Upon return to the record, Officer Olivett found Plaintiff not guilty of False Reporting.

On February 13, 2012, the second COPD Disposition was signed, indicating that Plaintiff had been found not guilty.  On February 15, 2012, an expungement order for the 2011 COPD conviction for False Reporting entered.

---

[3]Plaintiff does not allege a due process violation in this case.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

At the outset, the court notes that Plaintiff's Complaint is inartfully drafted. Plaintiff asserts three claims for relief. The First Claim for Retaliation is asserted against Defendants Herrera, Travis, Burke, Will, Burbank, and Foster in their individual capacities. Plaintiff clarifies in his response to the Partial Motion to Dismiss that the Second and Third Claims for Relief are asserted against Defendants Raemisch and Kirby in their official capacities only. (Resp. Partial Mot. Dismiss at 6.)

1.    ***First Claim for Relief for Retaliation asserted against Defendants Foster, Burke, and Will***

Defendants Burke, Will, and Foster argue that Plaintiff fails to state a retaliation claim against them.  (Partial Mot. Dismiss at 2–4; Mot. Dismiss at 2–5.)

"The existence of an improper motive for disciplining a prisoner which results in interference with a constitutional right" may give rise to a cause of action pursuant 42 U.S.C. § 1983.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).  Access to the courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances.  *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985).  Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief pursuant to 42 U.S.C. § 1997e, punishing him for actually filing a grievance would state a claim for both denial of access to the courts and violation of the First Amendment.  *See id.* ("It is also one aspect of the First Amendment right to petition the government for redress of grievances").  Therefore, "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Maschner*, 899 F.2d at 947.  "This principle applies even where the action taken in retaliation would be otherwise permissible."  *Id.* at 948.  Nevertheless, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  That is, not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim."  *Dawes v. Walker*, 239 F.3d 489, 492–93 (2d Cir. 2001),

9

*overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).  Instead, "in order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action."  *Baldauf v. Hyatt*, Civil Action No. 01–cv–01315–REB–CBS, 2008 WL 280839, at *7 (D. Colo. Jan. 31, 2008) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)).  "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place."  *Id.*

Plaintiff's conduct in filing a grievance is protected conduct, and thus satisfies the first element of a First Amendment retaliation claim.  *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (holding that prison officials may not retaliate against prisoners for filing lawsuits or petitioning for redress of grievances); *Nordgren*, 762 F.2d at 853.  Second, Plaintiff asserts that disciplinary charges were filed against him, which is sufficient to satisfy the element of adverse action.  *See Zarska v. Higgins*, 171 F. App'x 255, 259 (10th Cir. 2006).

Defendants argue that Plaintiff has failed to satisfy the third element of a retaliation claim by adequately asserting any alleged causal connection between the filing of his grievance and Defendants' conduct.  "An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Peterson*, 149 F.3d at 1144 (citation omitted).  That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*,

10

188 F.3d 322, 325 (5th Cir. 1999) ( "[T]he inmate must allege more than his personal belief that

he is the victim of retaliation."). The courts have recognized that, in retaliation claims, the

presentation of circumstantial evidence such as temporal proximity, a chronology of events, or

suspicious timing may be sufficient to support allegations of retaliation. *See Maschner*, 899 F.2d

at 949 (holding that the inmate sufficiently supported retaliation claim with "only means

available to him—circumstantial evidence of the suspicious timing of his discipline, coincidental

transfers of his witnesses and assistants").

 Defendants Burke, Will, and Foster argue that Plaintiff's retaliation claim against them

fails because his allegations do not support an inference that "but for" the retaliatory motive,

Plaintiff would not have been found guilty of False Reporting under the Code of Penal

Discipline. As to Defendant Foster, Plaintiff alleges only that, "On April 6, 2011, Defendant

Foster signed the COPD Disposition affirming the guilty finding."[4] (Am. Compl., ¶ 53.)

 As to Defendant Burke, Plaintiff alleges, "On April 1, 2011, Defendant Burke presided

over a formal COPD hearing against Mr. Laratta." (Compl., ¶ 47.) Plaintiff also alleges

Defendant Burke signed the COPD Disposition. (*Id.*, ¶ 51.) Finally, as to Defendant Will,

Plaintiff alleges she "approved the charges, and signed the COPD Notice as the 'reviewing

---

[4]In his response, Plaintiff provides as an exhibit an email exchange between Defendant Foster and another CDOC employee which Plaintiff argues shows "Defendant Foster not only gave final approval of the False Reporting conviction against Mr. Laratta, but in fact that he directed initiation of the False Reporting charge in the first place." (Resp. Mot. Dismiss at 17.) The court cannot consider this exhibit without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

supervisor' " (*id.*, ¶ 39) and that she "presented CDOC's case against [Plaintiff] as the disciplinary officer; specifically, she read the factual summary from the COPD Notice into the record, produced Mr. Laratta's chron record, an affidavit from Ms. Jones, and a memorandum from Mr. Herrera" (*id.*, ¶ 47).

The court agrees that Plaintiff has failed to allege "that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Peterson*, 149 F.3d at 1144. Moreover, even viewing Plaintiff's allegations in the light most favorable to him, they do not establish that Defendant Foster, Burke, or Will had a retaliatory motive. *See Dawson v. Johnson*, 266 F. App'x 713, 716 (10th Cir. 2008) (finding allegations that defendants presided over disciplinary hearing, investigated charge, presented facts in support of charge at disciplinary hearing, and affirming conviction insufficient to establish motive or personal participation in retaliation claim). Therefore, the Motions to Dismiss Plaintiff's First Claim for Relief for Retaliation asserted against Defendants Foster, Burke, and Will should be granted.

**2.** ***Statute of Limitations on Plaintiff's Second and Third Claims for Relief Asserted Against Defendants Raemisch and Kirby***

Defendants Raemisch and Kirby argue that Plaintiff's Second Claim for Undue Restrictions on Speech and Third Claim for Relief that the False Reporting charge is unconstitutionally vague should be dismissed as barred by the statute of limitations.[5]

---

[5]In their Motion to Dismiss, Defendants Raemisch and Kirby join the Partial Motion to Dismiss filed by Defendants Burke, Travis, Will, and Herrera, and incorporate all arguments contained therein. (Mot. Dismiss at 1.)

The applicable statute of limitations on claims under 42 U.S.C. § 1983 is determined by state law, and Colorado's residual two-year limitations period applies to this case. *Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir.1993); Colo. Rev. Stat. § 13-80-102(I).  The question of when a cause of action accrues and when the limitations period accordingly begins to run is governed by federal law, which provides that "[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quotations omitted).  Thus, a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (quotations omitted).

Plaintiff alleges the False Reporting regulation set forth in the COPD constitutes an undue restraint on Plaintiff's First Amendment rights to free speech and to petition the government for redress of his grievances.  (Compl., ¶ 76.)  Plaintiff also alleges the COPD charge does not provide meaningful notice to Plaintiff as to what conduct is prohibited and subject to disciplinary action.  (*Id.*, ¶ 79.)  Plaintiff sought leave to file his Third Amended Complaint adding the Second and Third Claims against Defendants Raemisch and Kirby, in their official capacities, on June 1, 2013 (Doc. No. 38), and the motion to amend was granted on July 31, 2013 (Doc. No. 46).  Defendants Raemisch and Kirby argue that the limitations period relating to these claims began to accrue, at the latest, on May 17, 2011, when Plaintiff's disciplinary infraction was upheld by the administrative head.  (Mot. Dismiss at 3.)  The court agrees that the statute of limitations has run on Plaintiff's Second and Third Claims for Relief.

13

### A.    Relation Back

Nevertheless, Plaintiff first argues that the claims are not barred by the statute of limitations because he has asserted the claims since the inception of the case.  (Resp. Mot. Dismiss at 9.)  It appears that Plaintiff argues that the Second and Third Claims "relate back" to these complaints, all of which were filed before the statute of limitations expired, pursuant to Fed. R. Civ. P. 15(c).

Rule 15(c)(1) governs the relation back of amendments.  If the applicable statute of limitations has run, an amended complaint may relate back to the date of the timely filed original complaint when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint [120 days from date of filing], the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A-C).  As reflected in the plain language of the statute, Rule 15(c)(1)(B) applies to an amendment asserting a claim or defense, and Rule 15(c)(1)(C) applies to an amendment changing a party or the naming of a party (the connecting word between Rule 15(c)(1)(B) and (C) is "or").  *See Pierce v. Amaranto*, 276 F. App'x 788, 792 (10th Cir. 2008) (finding that the predecessor to Rule 15(c)(1)(B) governs " issues, not parties, that were not

raised in the pleadings").  The purpose of relation back is "to balance the interests of the

defendant protected by the statute of limitations with the preference expressed in the Federal

Rules of Civil Procedure . . . for resolving disputes on their merits."  *Krupski v. Costa Crociere*

*S.p.A.*, 560 U.S. 538, 130 S. Ct. 2485, 2494 (2010).

### i.      *Relation Back of Added Claims*

The rationale behind Rule 15(c)(1)(B) is that "a party who has been notified of litigation

concerning a particular occurrence has been given all the notice that statutes of limitations were

intended to provide."  *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)

(citation omitted).  As long as there is a "factual nexus" between the original and amended

complaints, the amended claim "is liberally construed to relate back to the original complaint if

the defendant had notice of the claim and will not be prejudiced by the amendment."  *Benton v.*

*Bd. of Cnty. Comm'rs*, No. 06–cv–01406–PSF, 2007 WL 4105175, at *3 (D. Colo. Nov. 14,

2007), *aff'd*, 303 F. App'x 625 (10th Cir. 2008) (quoting *Grattan v. Burnett*, 710 F.2d 160, 163

(4th Cir. 1983)).  The law governing application of the relation back doctrine is summarized as

follows:

> As a general rule, amendments will relate back if they amplify the facts
> previously alleged, correct a technical defect in the prior complaint, assert a new
> legal theory of relief, or add another claim arising out of the same facts.  For
> relation back to apply, there is no additional requirement that the claim be based
> on an identical theory of recovery.  On the other hand, amendments generally will
> not relate back if they interject entirely different facts, conduct, transactions or
> occurrences.  It is a matter committed to the district court's sound discretion to
> decide whether a new claim arises out of the same transaction or occurrence.

*Benton*, 2007 WL 4105175, at *3 (quoting *Kidwell v. Bd. of Cnty. Comm'rs of Shawnee Cnty.*, 40 F. Supp.2d 1201, 1217 (D. Kan. 1998).

Upon a review of Plaintiff's previously filed complaints, in each complaint Plaintiff asserted a claim alleging the then-defendants violated Plaintiff's First Amendment free speech and access-to-courts rights.  (*See* Doc. No. 1 at 6–12; Doc. No. 9 at 5–12; Doc. No. 14 at 5–14.) Therefore, the court finds that the free speech claim, Claim Two, relates back to the previously-filed complaints within the limitations period set forth for such claims in Colorado.  *Benton*, 2007 WL 4105175, at *3 ("As a general rule, amendments will relate back if they amplify the facts previously alleged, correct a technical defect in the prior complaint, assert a new legal theory of relief, or add another claim arising out of the same facts.").

However, in his first three complaints, Plaintiff did not state any facts related to the vagueness of COPD charge or the fact that the charge did not provide meaningful notice as to what conduct is prohibited and subject to disciplinary action.  Thus, the Third Claim for Relief does not amplify the facts previously alleged by the plaintiff, correct a technical defect in the prior complaint, assert a new legal theory of relief based on previously-asserted facts, or add another claim arising out of those facts.  *Benton*, 2007 WL 4105175, at *3.  Therefore, the court finds the Third Claim for Relief regarding the vagueness of the False Reporting COPD charge does not relate back to the previously-filed complaints, and, therefore, should be barred by the statute of limitations.[6]  *Id.*

---

[6]Because Plaintiff's Third Claim for Relief is barred by the statute of limitations, the court need not address Defendants' Motion to Dismiss Plaintiff's Third Claim for Relief for failure to state

### ii.        *Relation Back of Added Parties*

Rule 15(c)(1)(C) governs relation back of an amended complaint that "changes the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(c)(1)(C). Thus, with the addition of parties, Rule 15(c)(1)(C) governs relation back to the original complaint because the list of parties has "changed." *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004) (holding that [the predecessor to Rule 15(c)(1)(C)] governed relation back because the plaintiff's amendment "amounted to adding a new party" (citations omitted)); *see also Bell v. City of Topeka, Kansas*, 279 F. App'x 689, 692 (10th Cir. 2008) (applying Rule 15(c)(1)(C) when a plaintiff adds a new party). Accordingly, Rule 15(c)(1)(C) applies to the addition of new parties after the statute of limitations has run on new claims. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001) ("[i]f a complaint is amended to include an additional defendant after the statue of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint."). "[Rule 15(c)(1) ] mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion." *Krupski*, 560 U.S. 538 , 130 S. Ct. at 2496.

Here, the court has concluded that Rule 15(c)(1)(B) is satisfied as to Plaintiff's Second Claim; therefore, the court must determine whether "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or

---

a claim under Rule 12(b)(6).

should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

There is no indication in the record that, within 120 days, Defendants Raemisch and Kirby received actual notice of this action, and Defendants have not argued they will be prejudiced by defending on the merits.  Fed. R. Civ. P. 15(c)(1)(C)(i).  The court finds, however, that the defendants had constructive notice.

Although it appears the Tenth Circuit has not directly addressed whether notice may be imputed through counsel, other circuits and at least one district court within the Tenth Circuit have found such notice sufficient.  *See G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (noting that "[c]ases from other circuits confirm that Rule 15(c) notice is satisfied when 'the parties are so closely related in their business operations or activities that the institution of an action against one serves to provide notice of the litigation to the other' ") (citations omitted); *see also Ennis v. HCA Health Services of Oklahoma, Inc.*, CIV–04–682–D, 2008 WL 2510101, *4 n.3 (W.D. Okla. June 17, 2008) (finding that constructive notice may be imputed to a new defendant through its attorney who also represents the party or parties originally sued) (citations and quotations omitted).  Notably, the Supreme Court in *Krupski* also found constructive notice where the entity originally sued was represented by the same counsel as the prospective defendant.  *See Krupski*, 130 S. Ct. at 2491–92.

Here, Defendants Raemisch and Kirby are the Executive Director and Inspector General for the CDOC, the same state institution which employs the other defendants who have filed motions to dismiss Plaintiff's complaint.  Moreover, the same attorney represents all of the

18

defendants who have entered appearances in this case. Finally, the court notes that in his Second

Amended Complaint, Plaintiff named then-Executive Director of the CDOC Tom Clements as a

defendant, but the claims against him were dismissed pursuant to 28 U.S.C. § 1915A. (*See* Doc.

Nos. 14 & 19.) These factors weigh in favor of finding that Defendants Raemisch and Kirby had

constructive notice of the suit.

Nevertheless, Rule 15(c)(1)(C) requires that the added defendants (i) receive notice of the

action that they will not be prejudiced in defending on the merits; *"and* [that the added

defendants] (ii) knew or should have known that the action would have been brought against it,

but for a mistake concerning the proper party's identity." *Id.* (emphasis added). Plaintiff

essentially argues that he previously failed to name Defendants Raemisch and Kirby as

defendants and assert allegations against them because of a mistaken identity. Specifically,

Plaintiff argues that "[b]ecause Mr. Laratta requested declaratory and injunctive relief [in his

original complaint], it is clear that he intended to bring official capacity claims against the named

Defendants, i.e. against CDOC itself." (Resp. Mot. Dismiss at 10.) Because Plaintiff was

proceeding *pro se* at the time he filed his first three complaints, the court must construe those

complaints liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Court in *Krupski*

interpreted mistake to include cases in which a plaintiff knows of a party's existence but

misunderstands the role a party played in the incident giving rise to her claim. *See Krupski*, 130

S. Ct. at 2494. In this case, it is clear that Plaintiff, while proceeding *pro se*, misunderstood that

he had to name specific defendants in their official capacities in order to obtain declaratory and

injunctive relief.  The court finds that Plaintiff's misunderstanding constitutes a "mistake" under Rule 15(c)(1)(C)(ii).

Although Plaintiff's Second Claim for Relief against Defendants Raemisch and Kirby would otherwise be barred by the statute of limitations, under Rules 15(c)(1)(B) and (C), the court has found that the claim relates back to the date of original filing.  Therefore, Defendants Raemisch and Kirby's motion to dismiss Plaintiff's Second Claim for Relief based on the applicable statute of limitations properly is denied.

**3.     *Motion to Dismiss Second Claim for Relief for Undue Restriction on Speech for Failure to State a Claim***

Plaintiff alleges the CDOC's policy and practice of restraining prisoner speech through the use of the COPD False Reporting charge constitutes an undue restraint on Plaintiff's First Amendment rights to free speech and to petition the government for redress of his grievances. (Compl., ¶¶ 76–77.)

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  An inmate's exercise of constitutional rights is necessarily limited, however, "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."  *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974).  Accordingly, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell*, 417 U.S. at 822.  In the free-speech context the Supreme Court has

20

held that prison officials violate the First Amendment when, for reasons unrelated to legitimate penological interests, they engage in "censorship of . . . expression of 'inflammatory political, racial, religious, or other views,' and matter deemed 'defamatory' or 'otherwise inappropriate.' " *Procunier v. Martinez*, 416 U.S. 396, 415 (1974).  In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that prison regulations that impinge upon inmates' First Amendment rights are valid only if they are "rationally related to legitimate penological objectives."  The *Turner* Court articulated four factors that should be considered in determining the constitutionality of a prison's restrictions on speech, namely: (1) whether a valid, rational connection exists between the regulation and the government interest it protects; (2) whether prisoners have alternative means of exercising the protected right; (3) the impact of accommodating the right on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.  *Turner*, 482 U.S. at 89–90.

Both parties analyze the *Turner* factors in their briefs.  However, the Tenth Circuit has held that, on a motion to dismiss, "a court need only assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.' "  *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010)).  "Thus, while it is critical that a complaint address *Turner*'s core holding, the four *Turner* factors need not be part of the analysis at the pleading stage.  *Id.* (citing *Gee*, 627 F.3d at 1187).

Defendant argues that the COPD's stated purpose is to establish procedures, responsibilities, prohibitions, and sanctions that govern offender conduct at all CDOC facilities and to establish guidelines to assist prison officials in regulating the conduct of offenders. (Mot. at 5; *see* Ex. A-1 at 1.) Defendant also states that the purpose of the False Reporting disciplinary charge is to prevent offenders from (1) making allegations against others knowing that those allegations are false; (2) presenting physical evidence knowing that the evidence is forged, fabricated, or fraudulent; and (3) knowingly providing false or misleading information during an official investigation. (*Id.*; *see* Ex. A-1 at 9, ¶ (21).)

Plaintiff has presented no facts or argument that the policy of punishing prisoners for providing false information is unconstitutional on its face. The preservation of internal order and discipline, and the maintenance of institutional security, are legitimate penological objectives identified by the Supreme Court. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987); *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991). Prisoners have no constitutional right to present false information or to make false accusations against correctional officers. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues."). There clearly is a rational basis for correctional authorities to punish this type of conduct. Therefore, Plaintiff's claim that the False Reporting regulation is unconstitutional on its face should be dismissed. *Al-Owhali*, 687 F.3d at 1240.

Plaintiff appears to argue that, because Plaintiff was punished for making an allegedly truthful statement, the False Reporting regulation is unconstitutional as applied to him. (*See* Resp. Partial Mot. Dismiss at 11–17.) Plaintiff also argues that the defendants have failed to identify any interest they have in punishing truthful allegations of staff misconduct. (*Id.* at 14.) In support of his argument, Plaintiff cites two federal district cases he contends "have held that disciplinary charges that punish statements made in grievances place 'an unconstitutional chill on complaints that matter.' " (*Id.* at 11 [citing *Hancock v. Thalacker*, 933 F. Supp. 1449, 1487–93 (N.D. Iowa 1996) and *Alvaraz v. City of New York*, 31 F. Supp. 2d 334, 343 (S.D.N.Y. 1998) (hereinafter "*Alvaraz NY*")].) The court notes, however, that in *Hancock*, the court dealt only with false statements, finding that "in order to avoid an unconstitutional 'chill' on the right of petition, disciplinary sanctions for '**false**'. . . statements made in grievances may not be imposed unless some heightened burden of proof" such as "*proof by the preponderance, or greater weight, of the evidence* that the statements were knowingly false or defamatory is also met."[7] *Hancock*, 933 F. Supp. at 1490 (bold emphasis added; italics in original).[8] Moreover, the CDOC regulation at issue in this case requires the hearing officer or board to "***decide by majority***

---

[7]The court is unable to find any case, and Plaintiff does not cite any case, that supports Plaintiff's claim that his free speech rights have been unduly restricted due to the alleged misapplication of a prison regulation intended for some other purpose. Rather, it appears the correct avenue for redress in such cases is through a retaliation claim, which Plaintiff has separately asserted, or through a due process claim, which Plaintiff does not assert in this case.

[8]The *Hancock* court declined to grant summary judgment in favor of the plaintiffs because there existed a genuine issue of material fact as to whether the statements of the plaintiffs in their grievances found to be knowingly false or defamatory were so proved by the preponderance, or greater weight, of the evidence. *Hancock*, 933 F. Supp. at 1490.

**vote the offender's guilt or innocence, as determined by a preponderance of the evidence**"

(Partial Mot., Ex. A-1, § IV.E.3.o. [emphasis in original]) that the statements in the grievance

were knowingly false, untruthful, or misleading (*id.*, Ex. A-1 at 9, ¶ (21)).[9]  Thus, the regulation

meets the requirements set forth by the *Hancock* court to prevent an unconstitutional chill on the

right of petition.

       Plaintiff also cites *United States v. Alvarez*, — U.S. —, 132 S. Ct. 2537 (2012)

(hereinafter "*Alvaraz I*"), in support of his argument that even false speech is protected and, thus,

truthful statements must also be protected.  (Resp. Partial Mot. Dismiss at 11–14.)  In *Alvaraz I*,

the Supreme Court held that the Stolen Valor Act, which made it a crime to falsely claim receipt

of military decorations, constituted a content-based restriction on free speech in violation of the

First Amendment for which the Government had failed to provide a sufficient rationale for its

chilling effect on legitimate speech.  *Alvaraz I*, 132 S. Ct. 2537.  The Stolen Valor Act was

vulnerable to First Amendment challenge not because false speech is never protected, but

because the Supreme Court found that the Stolen Valor Act targeted "falsity and nothing more,"

---

     [9]Contrary to Plaintiff's assertion, the second district court case cited by Plaintiff, *Alvaraz NY*, did not find that "disciplinary charges that punish statements made in grievances place 'an unconstitutional chill on complaints that matter.' " (Resp. Partial Mot. Dismiss at 11.)  The *Alvaraz NY* court granted a preliminary injunction in an employment retaliation case to enjoin the employer from pursuing disciplinary proceedings against the employee based on the employee's filing of another civil case.  The *Alvaraz NY* court merely noted that, in a prison context, " '[t]he courts must not only tolerate, but must impose constitutional protection of the right of petition to an extent that necessarily encompasses some false claims in order to prevent an unconstitutional chill on complaints that matter.' " *Alvaraz*, 31 F. Supp. at 343 (quoting *Hancock*, 933 F. Supp. at 1486–87).

*id.*, 132 S. Ct. at 2545, and applied "to a false statement made at any time, in any place, to any person," 132 S. Ct. at 2547.  Thus, the ruling in *Alvaraz I* does not apply to this case.

Finally, in this case, there is no allegation or argument that the defendants knew at the time they filed the False Reporting charge that Plaintiff's statements about Ms. Jones's conduct may have been true.  There also is no indication in the record, other than Plaintiff's conclusory and self-serving allegations, that the statements about Ms. Jones's alleged conduct were truthful. Rather, the Fremont County District Judge remanded Plaintiff's case to the CDOC for a new disciplinary hearing because he determined the CDOC did not prove by a preponderance of the evidence that Plaintiff's statements were false.  (*See* Resp. Mot. to Dismiss, Ex. 1 at 4, 7.)  Even if it *may* have been determined at a later time that Plaintiff was making truthful accusations about Ms. Jones's conduct, and to the extent Plaintiff alleges the individual defendants retaliated against Plaintiff or did not follow the prison policy because Plaintiff was punished for making truthful statements, does not mean that the policy itself is unconstitutional as it was applied to him.  Rather, these questions go to the remaining individual defendants' actions and the retaliation claim asserted against them.

Because the False Reporting regulation "is 'reasonably related to a legitimate penological interest,' " *Al-Owhali*, 687 F.3d at 1240, Plaintiff's Second Claim for Relief for Undue Restriction on Speech in Violation of the First Amendment properly is dismissed.

**4.**      ***Compensatory Damages and the Prison Litigation Reform Act***

Defendants move to dismiss Plaintiff's claim for compensatory damages as barred by the

Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e).[10]  (Partial Mot. Dismiss at

10–11.)

Section 1997e(e) of the PLRA provides that "[n]o Federal civil action may be brought by

a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury

suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear damages
> restrictions on the basis of the underlying rights being asserted.  The underlying
> substantive violation . . . should not be divorced from the resulting injury, such as
> "mental or emotional injury," thus avoiding the clear mandate of § 1997e(e).  The
> statute limits the remedies available, regardless of the rights asserted, if the only
> injuries are mental or emotional.

*Searles v. VanBebber*, 251 F.3d 869, 876 (10th Cir. 2001).

Plaintiff alleges during his time in punitive segregation, he suffered from sleep

deprivation, a "psychotic break," anxiety, depression, paranoia, and hallucinations.  (Compl., ¶¶

59, 61, 62.)  The PLRA requires a prisoner to cite a physical injury that is separate from mental

and emotional injuries.  This and numerous other courts have held that a prisoner cannot satisfy

---

[10]Plaintiff states he "assumes that only Defendants Will and Burke seek to dismiss his claim
for compensatory damages" because Defendants Will and Burke did not move to dismiss the
retaliation claim, the only claim for which compensatory damages is sought.  (Resp. Partial Mot.
Dismiss at 19 n.1.)  The court does not make the same assumption.  The motion to dismiss the
compensatory damages claims is brought by Defendants Will, Burke, Herrera, and Travis, who
jointly filed the partial motion to dismiss.

the physical injury requirement of the PLRA by alleging only physical manifestations of mental

or emotional injuries.  *See Hughes v. Colo. Dept. of Corrs.*, 594 F. Supp. 2d 1226, 1238 (D.

Colo. 2009) (finding physical manifestations of depression and anxiety insufficient to satisfy

physical injury requirement of § 1997e(e)); *see also Davis v. District of Columbia*, 158 F.3d

1342, 1349 (D.C. Cir. 1998) (affirming *sua sponte* dismissal with prejudice despite psychiatrist's

affidavit stating that prisoner suffered weight loss, appetite loss, and insomnia because §

1997e(e) precludes reliance on somatic manifestations of emotional distress); *Murray v.

Edwards Cnty. Sheriff's Dept.*, 453 F. Supp. 2d 1280, 1292 (D. Kan. 2006) (noting that weight

loss, alone, is insufficient to demonstrate physical injury under the PLRA); *Minifield v.

Butikofer*, 298 F. Supp. 2d 900, 905 (N.D. Cal. 2004) (stating that "[p]hysical symptoms that are

not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a

prior showing of physical injury"); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va.

1997) (holding that depression and severe headaches caused by emotional distress not a

"physical injury" under the PLRA).  In his Complaint, Plaintiff alleges only physical

manifestations of mental or emotional injuries.  *See Hughes*, 594 F. Supp. 2d at 1238.  Therefore,

he is unable to recover compensatory damages under 42 U.S.C. § 1997e(e).

However, section 1997e(e) does not bar recovery of punitive damages, declaratory or

injunctive relief, or nominal damages.  *Searles*, 251 F.3d at 881 (noting that punitive damages

may be awarded for constitutional violations without a showing of compensable injury); *see also

Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 808 (10th Cir. 1999) (holding that nominal

damages are available for violations of certain absolute constitutional rights, such as due process,

without any showing of actual injury). Plaintiff seeks compensatory damages only in his retaliation claim (*see* Compl., ¶ 74), and, as discussed *supra*, this court recommends Plaintiff's Second and Third Claims for Relief should be dismissed. Therefore, Defendant's motion to dismiss Plaintiff's compensatory damages claim should be granted except to the extent he seeks nominal and punitive damages for the retaliation claim.

**5.  *Qualified Immunity***

Defendants Foster, Will, and Burke, in their individual capacities, raise the defense of qualified immunity to Plaintiff's claims. Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). To overcome the defendant's claim of qualified immunity, the plaintiff must establish that the defendant's actions violated a constitutional or statutory right of the plaintiff's and that the right at issue was clearly established at the time of the defendant's alleged unlawful conduct. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

The plaintiff has not established that Defendants Foster, Will, and Burke violated a constitutional or statutory right of the plaintiff's. Therefore, Defendants Foster, Will, and Burke are entitled to qualified immunity in their individual capacities.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that the "Partial Motion to Dismiss Third Amended Complaint" (Doc. No. 48) be **GRANTED** in part and **DENIED** in part, and that the "Motion to Dismiss Third Amended Complaint" (Doc. No. 62) be **GRANTED** as follows:

1.     The Motions to Dismiss Plaintiff's First Claim for Relief for Retaliation asserted against Defendants Foster, Burke, and Will should be granted;

2.     Defendants Raemisch and Kirby's Motion to Dismiss Plaintiff's Third Claim for Relief regarding the vagueness of the False Reporting COPD should be granted, and the Third Claim for Relief should be dismissed as barred by the statute of limitations;

3.     Defendants Raemisch and Kirby's Motion to Dismiss the Second Claim for Relief based on the applicable statute of limitations should be denied;

4.     The Motion to Dismiss Plaintiff's Second Claim for Relief for Undue Restriction on Speech in Violation of the First Amendment should be granted and the Second Claim for Relief should be dismissed for failure to state a claim;

5.     Defendants' Defendants Will, Burke, Herrera, and Travis's Motions to Dismiss Plaintiff's compensatory damages claims should be granted in part and denied in part.  Plaintiff's claims for compensatory under 42 U.S.C. § 1997e(e) should be granted except to the extent Plaintiff seeks nominal and punitive damages for the retaliation claim;

6.     Defendants Foster, Will, and Burke should be granted qualified immunity on Plaintiff's claims against them in their individual capacities; and

29

7.      The case should proceed on Plaintiff's First Claim for Relief for retaliation

asserted against Defendants Travis, Herrera, and Burbank, to the extent Plaintiff

seeks nominal and punitive damages only.[11]

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

---

[11]Defendant Burbank has not been served with the Complaint.

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 26th day of February, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge