**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CHIEF JUDGE MARCIA S. KRIEGER**

Civil Action No. 12-cv-02079-MSK-KMT

**GIOVANNI LARATTA,**

   Plaintiff,

v.

**SEAN FOSTER,
LYNN TRAVIS, and
TINO HERERRA,**

   Defendants.

---

### OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment (**#97**), the Plaintiff Giovanni Laratta's Response (**#104, 105, 106**), and the Defendants' Reply (**#111**).

### ISSUE PRESENTED

Mr. Laratta is incarcerated by the Colorado Department of Corrections (CDOC). Mr. Laratta asserts that several prison officials at the Centennial Correctional Facility (CCF), retaliated against him by subjecting him to disciplinary proceedings after he filed a grievance against a correctional officer in violation of 42 U.S.C. § 1983.

The Defendants move for summary judgment, asserting that 1) Mr. Laratta cannot establish a *prima facie* case of retaliation; 2) the Defendants are entitled to qualified immunity; and 3) Mr. Laratta cannot recover punitive damages.

## **MATERIAL FACTS**

The Court recites the following as undisputed facts and, where there is a dispute, construes the facts most favorably to the non-movant, here Mr. Laratta.

1. **Underlying Grievance**

On January 25, 2011, Ms. Jones, a CDOC employee, filed an incident report and entered a negative chronological entry ("chron") against Mr. Laratta. On February 13, 2011, Mr. Laratta filed a step one grievance under the CDOC's inmate grievance process, alleging that Ms. Jones gave him a negative chron because he refused Ms. Jones' sexual advances. He alleged that Ms. Jones had attempted to develop an inappropriate personal relationship with him by giving him preferential treatment, asking him personal questions, and offering to send him nude photographs. When Mr. Laratta told Ms. Jones to leave him alone, he alleges that she filed the negative chron.

2. **CDOC Investigation**

CDOC policy requires that employees refer grievances alleging sexual misconduct to the Office of Inspector General (OIG) before taking any steps to resolve the grievance. On February 24, 2011, Mr. Foster, the Associate Warden at CCF, advised Mr. Herrera, a criminal investigator for the OIG, of Mr. Laratta's claims against Ms. Jones.

Mr. Herrera opened an investigation on March 1, 2011. On March 5, 2011, Mr. Foster sent an email to Mr. Herrera stating, "Can we talk to the officer to respond to the grievance? Where he claimed she was asking him to show his genitalia, and offering nude photos of herself. I would like to charge the offender with false reporting if this is what the offender did?" Mr. Herrera responded, "That's okay with me."

In an incident narrative dated March 8, 2011, Mr. Herrera recorded the following with regard to his meeting with Mr. Laratta:

> I asked Laratta if he has any proof that Jones did this. Laratta said all he has is his word. Laratta reported he understands that this case will not go anywhere without proof, but he does want it documented for further reference.
>
> . . .
>
> I explained that without any physical proof I will not pursue any charges against Jones. Laratta stated he understood and asked that I remove the negative chron from his record. I explained that I will not do that.
>
> In conclusion it appears Laratta is trying to smear the reputation of Officer Jones by alleging she solicited him for sex.
>
> This will be closed as unfounded and returned to the facility for administrative charges.

According to Mr. Laratta, Mr. Herrera told him at this meeting that he would be subject to Code of Penal Discipline (COPD) False Reporting charges if he could not prove that Ms. Jones sexually harassed him. Mr. Herrera also summarized this exchange in an email on March 8, 2011 to Hector Huertas, Mr. Foster, and another CDOC employee. At some point, Mr. Huertas acknowledged, "[Mr.] Foster advised me that we may consider addressing this offender with False Reporting. Let me know how to proceed with this matter."

Mr. Herrera prepared two incident indictment forms that included two "Informative/Incident Report Forms", one from Ms. Jones and one from Mr. Travis. The Incident reports were dated March 8, 2011.[1] Both Reports state that Mr. Travis and Ms. Jones reviewed and discussed Mr. Larrata's grievance on March 5, 2011. Ms. Jones' Incident Report also denied ever offering Mr. Laratta nude pictures or asking him to show his genitals. Mr.

---

[1] Ms. Jones' Incident Report is dated March 3, 2011. However, the email exchange with Mr. Huertas acknowledges that the date was "a typo and the correct date was March 8th as recorded on the signature line."

Travis' Incident Report stated that he reviewed the search records and found no searches conducted by Ms. Jones within the 90 days prior.

### 3. Institutional Investigation and Disciplinary Charges

At the detention facility, Mr. Travis began an investigation of Mr. Laratta's allegations. Mr. Travis spoke with Mr. Laratta about his grievance on March 17, 2011. Mr. Laratta suggested that video recording might corroborate his claim. However, Mr. Travis wrote that a review of the search logs did not corroborate, but instead contradicted Mr. Laratta's claim. As a result, Mr. Travis concluded that:

> The investigation found that the allegations were false and made by Offender Laratta to discredit Officer Jones in an attempt to have a negative chronological entry removed from his record. Offender Laratta claimed that a DOC employee engaged in conduct that violated DOC policy knowing that the allegations were false, untruthful, or misleading.

Mr. Travis completed his investigation into the matter on March 17, 2011, and then initiated charges against Mr. Laratta for False Reporting to Authorities.[2] Mr. Travis' supervisor included a note on the Report of the charges stating, "FYI: S. Foster requested charges." A "Notice of Charge(s)" which formally charged Mr. Laratta with False Reporting to Authorities on March 25, 2011.

After a hearing, Mr. Laratta was found guilty of False Reporting to Authorities on April 1, 2011. Mr. Laratta first filed an unsuccessful administrative appeal, and then challenged his COPD conviction in state court. The state court determined that the CDOC abused its discretion when it convicted Mr. Laratta of False Reporting and remanded the matter to CDOC for a new

---

[2] According to the COPD, an offender commits False Reporting when he (i) makes a report alleging criminal conduct by a CDOC employee, knowing that the allegation is false, untruthful or misleading; (ii) makes a report alleging that a CDOC employee engaged in conduct that violated CDOC policy, knowing that the allegation is false, untruthful, or misleading; (iii) presents physical evidence knowing that it is forged, fabricated, or fraudulent; or (iv) knowingly provides false or misleading information during the course of an official CDOC investigation.

4

hearing. During the new hearing, Mr. Laratta was found not guilty of the False Reporting charge and his conviction was expunged.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed.R.Civ.P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## **ANALYSIS**

**A. Retaliation Claims**

The Defendants seek summary judgment on Mr. Laratta's retaliation claims, contending that he cannot establish a *prima facie* case of retaliation, and, even if he can, that each Defendant is entitled to qualified immunity.[3] Due to the nature of qualified immunity[4], these

---

[3] In his Response, Mr. Laratta argues that the Defendants have not asserted qualified immunity as to his retaliation claim. Although the Defendants did not address this argument in their Reply, the Court interprets the Motion for Summary Judgment as asserting that the Defendants are entitled to qualified immunity on Mr. Laratta's retaliation claims.

[4] The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action. *See Johnson v. Fankell,* 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). *Pearson v. Callahan,* 555 U.S. 223 (2009). When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009). The plaintiff must make both showings in order to avoid application of qualified immunity.

To show that a defendant's actions deprived him or her of a constitutional or statutory right, a plaintiff must precisely articulate the right that was allegedly violated and specifically identify the defendant's conduct that violated the right. *See e.g. Green v. Post* 574 F.3d 1294,1300 (10th Cir. 2009). To show that the identified right was clearly established at the time of the injury, the plaintiff must demonstrate case law from the Supreme Court or Tenth Circuit that put the defendants on notice that the alleged conduct would be unconstitutional. *See Brosseau v. Haugen,* 543 U.S. 194, 199–200 (2004): *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir. 2006).

6

arguments overlap with regard to Mr. Larrata's ability to come forward with sufficient evidence to make a *prima facie* showing.

It is undisputed that prison officials may not retaliate against a prisoner for exercising his or her constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *see also Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006). To establish retaliation claim under §1983, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's actions were substantially motivated as a response to his constitutionally protected conduct. *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009). To satisfy the third element a plaintiff must establish "that the defendants' alleged retaliatory motives were the 'but for' cause of the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998). To do so,

For the purpose of their Motion for Summary Judgment, the Defendants do not dispute Mr. Laratta's ability to establish the first two elements of a *prima facie* retaliation claim. Instead, they focus on whether he can show that the Defendants' decisions to initiate disciplinary proceedings were a retaliatory response to his grievance against Ms. Jones. The Defendants assert that their actions were not retaliatory because each Defendant had a legitimate penological reason for his action - each Defendant believed that Mr. Laratta had falsely accused Ms. Jones of misconduct.

Actions taken in retaliation for the exercise of constitutionally protected conduct is give rise to claims under § 1983 even if there were other permissible reasons for such actions. *See Maschner*, 899 F.2d at 948. Thus, the question before the Court is whether Mr. Laratta has come forward with sufficient evidence, which if considered without anything to the contrary, would be

7

sufficient to establish that the Defendants' decisions to initiate disciplinary proceedings were in retaliation for Mr. Larrata's grievance. Mr. Laratta's grievance was lodged on February 13, 2011.

### 1. Mr. Travis

Mr. Travis prepared an incident report on March 8, 2011 which stated that he discussed Mr. Larrata's grievance on March 5. On that date, Mr. Travis told Mr. Foster that he believed that bringing a False Reporting charge against Mr. Laratta would be warranted. Later, Mr. Travis conducted a factual investigation with regard to Mr. Laratta's allegations, and concluded that they were false and that a False Reporting charge should be brought against him. Viewed in the light most favorable to Mr. Laratta, this evidence could suggest that Mr. Travis concluded that the charge against Mr. Laratta was appropriate because of the mere existence of the grievance, rather than as a result of a thorough investigation of the facts underlying it. This presents a triable issue as to whether Mr. Travis' recommendation to pursue disciplinary charges, and his subsequent investigation, was motivated by retaliatory purpose.

### 2. Mr. Foster

On March 5, 2011, Mr. Foster emailed Mr. Herrera, stating that he wanted to charge Mr. Laratta with False Reporting. This followed Mr. Foster's conversation with Mr. Travis. However, as noted above, no investigation into the accusations into Mr. Laratta's grievance had occurred. Mr. Foster also testified that, at the time he decided to pursue the False Reporting charge, it was "likely that no one had discussed the incident with Mr. Laratta." Prior to the completion of Mr. Herrera's OIG investigation, Mr. Foster iterated his desire to initiate False Reporting charges to another CDOC employee, Mr. Huertas. Based on this evidence, a reasonable jury could conclude that Mr. Foster decided to pursue False Reporting charges against

8

Mr. Laratta prior to a complete investigation into the veracity of the claims contained in his grievance. This is sufficient to make a *prima facie* showing that Mr. Foster's decision to initiate disciplinary proceedings was a retaliatory response to Mr. Laratta's grievance.

### 3. Mr. Herrera

After receiving Mr. Foster's March 5th email about charging Mr. Laratta with False Reporting, Mr. Herrera responded, "That's ok with me," even though he had not yet conducted any investigation into the claims in Mr. Laratta's grievance. On March 8, 2011, Mr. Huertas emailed Mr. Herrera saying, "[Mr.] Foster advised me that we may consider addressing this offender with False Reporting. Let me know how to proceed." That same day Mr. Herrera issued his report in which he returned the matter "for administrative charges." Mr. Herrera testified that he conducted his entire investigation into the allegations in Mr. Laratta's grievance on March 8, 2011. It is unclear from the record at what time during the day Mr. Herrera conducted his investigation. However, Mr. Herrera was told at least once, and possibly twice, by CDOC staff that they hoped to charges Mr. Laratta with False Reporting before Mr. Herrera began investigating the claims in the grievance. He responded in agreement each time. In addition, according to Mr. Laratta, Mr. Herrera threatened to charge Mr. Laratta with False Reporting when he interviewed him about his grievance. When viewed in the light most favorable to Mr. Laratta, the evidence could support a finding that Mr. Herrera endorsed bringing charging against Mr. Laratta with False Reporting before an investigation into his grievance was completed. Again, this creates a triable issue of fact.

Finding a *prima facie* showing sufficient for claims against each Defendant to proceed to trial, the Court turns to the second prong of the qualified immunity analysis – a clearly established right. The Court need not belabor its analysis in this regard. It is clearly established

that prison officials cannot discipline an inmate simply because the inmate filed a grievance. *See Fogle*, 435 F.3d at 1264; *Maschner*, 899 F.2d at 947. Accordingly, the Court finds that construing all evidence most favorably to Mr. Laratta, a *prima facie* showing of violation of his clearly established constitutional right has been made. The Defendants are not entitled to qualified immunity and their motion for summary judgment is denied. A trial on these claims is required.

### B. Punitive Damages

The Defendants also seek summary judgment on Mr. Laratta's request for a punitive damage award. An award of punitive damages, however, is a remedy, not a claim and, therefore, is not amenable to summary determination under Rule 56.[5]

### CONCLUSION

For the foregoing reasons

(1) The Defendants' Motion for Summary Judgment (**#97**) is **DENIED**.

(2) The parties shall promptly begin preparation of a Proposed Pretrial Order consistent with the April 22, 2013 Trial Preparation Order (**# 34**) and shall make arrangements to jointly contact chambers to schedule a Pretrial Conference.

Dated this 25th day of March 2015.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge

---

[5] If, at trial, Mr. Laratta has laid a factual predicate warranting the submission of punitive damages to the factfinder, that issue will be submitted; if the factual predicate is not present, punitive damages may not be awarded.